IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE RASMUSSEN,

        Plaintiff,

v.                      No. CIV 98-0225 BB/WWD

RICHARDSON INVESTMENTS, INC., d/b/a
RICH FORD,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's motion for summary judgment (Doc. 25). Having considered the submissions of the parties and the applicable law, the Court determines that Defendant's motion should be DENIED.

**Summary Judgment Standard**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the

presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

**Discussion**

Plaintiff's lawsuit is a Title VII hostile-environment claim based on sexual harassment. Plaintiff maintains she was subjected to a hostile environment.[1] Defendant maintains Plaintiff has failed to produce sufficient evidence to establish two of the prongs necessary to show a hostile environment existed: (1) the harassment or abusive conduct was gender-based; (2) the atmosphere was sufficiently severe and pervasive as to alter the conditions of her employment and create an abusive work environment. *See Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998).

Viewed in the light most favorable to Plaintiff, as it must be, the admissible evidence adduced by Plaintiff would allow a reasonable jury to find the following as the facts of this case. One fellow employee of Plaintiff's in particular, John Mooney, was the perpetrator of much of the abusive conduct directed at Plaintiff. In 1994, Mooney directed a tirade at Plaintiff, yelling at her that "All women are fucking cunts and shouldn't be in this business," and "You heard me, you fucking ..." and

---

[1] According to Defendant, Plaintiff has also raised a retaliation claim and a constructive-discharge claim. However, the only cause of action alleged in the complaint is one for hostile-work-environment sexual harassment. No damages are requested for lost wages. Furthermore, the initial pretrial order lists as Plaintiff's sole claim the existence of an offensive work environment. Finally, Plaintiff did not present any argument or authority in her summary-judgment brief concerning either retaliation or constructive discharge. For these reasons, the Court finds the only claim raised in this case is one based on Plaintiff's allegations of a hostile work environment. It is therefore unnecessary to discuss the other two causes of action analyzed by Defendant, and Defendant's motion for summary judgment asking for dismissal of the retaliation and constructive discharge claims is denied as moot.

so on, in a similar vein. Although this incident was reported to management, Mooney was not discharged. Instead, he was moved to another car lot, although he was transferred back shortly thereafter. Mooney continued to use extremely foul language throughout Plaintiff's tenure at the used car lot, consistently including variations of the word "fuck," even though several women complained to him and to management about his language. Plaintiff had to ask him two to three times per week to watch his language, especially when customers were around. Mooney, however, never quit using the offensive language and was not disciplined by management again for his foul language.

Mooney also did one extremely offensive thing, more than once – he went into the women's bathroom and urinated on the floor, the toilet seat, and the walls. This behavior was ostensibly directed at Plaintiff, although the testimony as to Mooney's motivation is hearsay. Mooney was not disciplined for this conduct, even though it was reported to Dave M., the person in charge of the used car lot.[2] The other major work-related incident involving Mooney, which led to his termination, occurred when he and another salesman began fighting on the lot, using abusive language again and scaring off some of Plaintiff's customers.[3] Finally, Mooney several times referred to Plaintiff as a "bitch" (apparently not to her face).

Although Mooney was the primary cause of Plaintiff's discomfiture at work, he was by no means the only one. The atmosphere on the used car lot was one in which management-level

---

[2]Dave M.'s name has been spelled quite differently in the deposition transcripts, making the Court unsure what his last name is. Hence, the use of the last initial rather than a full name.

[3]There was also an incident in which Mooney went to Plaintiff's house, while she was not present, to sexually proposition a friend and fellow employee of Plaintiff's. Since this incident was not work-related and was not reported to management, the Court has not considered it in analyzing Plaintiff's claim.

3

employees such as Mike Heffron, as well as other male employees, felt free to make offensive comments to female temporary employees, including comments inquiring how one temporary could answer the telephone with her "big boobs" getting in the way. At some point, the temporary service stopped sending its employees to the used car lot, although the ostensible reason for that action (the harassment they endured) is hearsay and may not be considered. There is evidence, however, that a meeting was held with the male employees of the used car lot concerning the temporary employees, from which the female employees were excluded. Another supervisor, Phil Sierra, telephoned a friend and fellow employee of Plaintiff's to propose a sexual liaison, and Plaintiff subsequently heard him yelling in the hallway that he was going to "fuck her and bring back proof." Sierra also forbade Plaintiff from using a 1-800 number that Defendant had established for reporting harassment or employee problems of any kind. In addition to Mooney using the women's bathroom, other male employees frequently did so also, although they did not urinate on the floor and toilet seat as he did. They did this whether or not the men's room was out of order, and occasionally walked in while women were in the bathroom. In addition, in a trivial example of the attitude toward women at the used car lot, someone crossed off the "WO" from the WOMEN sign on the bathroom door, and the sign was allowed to remain in that condition.

    The final straw for Plaintiff was Defendant's rehiring of Mooney only three or four months after he had been terminated for the altercation with another employee. Although Plaintiff has no admissible evidence the rehiring was an attempt to force her out, she felt that was the reason. Given the other incidents on the used car lot, a reasonable jury could find this was management's motivation. Plaintiff was the one who initially complained about Mooney, made other complaints about his behavior, and by reporting the final incident, caused his firing. Without talking to her first,

4

Defendant decided to hire Mooney back, knowing he had exhibited severe antagonism toward Plaintiff in the past and would very likely do so again. This raises a fact question as to Defendant's motives and as to the environment Plaintiff was forced to work in.

Of course, it is possible, as Defendant does, to pick apart Plaintiff's evidence. The severe incidents were spread over a long period of time, and could be characterized as sporadic. Some of the constant, ongoing conduct, such as Mooney's incessant use of the word "fuck" and its derivatives, is not necessarily gender-based, and usually was not directed particularly at Plaintiff.[4] Nonetheless such terms, as part of a pattern, may support a finding of sexual harassment. *Winsor v. Hinckley Dodge*, 79 F.3d 996 (10th Cir. 1996). The harassment of temporary employees was also not directed at Plaintiff. If the Court considers only the specific incidents raised by Plaintiff up to this point, analyzing each separately, there is considerable doubt whether Plaintiff has produced sufficient evidence to survive summary judgment. However, the Tenth Circuit has cautioned that hostile-environment cases are not appropriate for a mechanical approach examining each alleged incident in a vacuum. Instead, this Court must review the totality of the circumstances, including the context in which the alleged incidents occurred. *Penry*, 155 F.3d at 1262.

Doing so in this case requires consideration of one fact alleged by both Peggy Branson and Barbara Sanchez, employees of Defendant who had asked to be transferred to the used car lot. Both of them initially saw their requests denied, and Branson's was never granted. More important, however, is the reason for those denials. Both women were told by Mike Blair, an upper-level

---

[4]It should be noted, however, that several female employees other than Plaintiff complained about Mooney's language, yet the management did nothing to stop it. When conduct is particularly offensive to female employees, and no steps are taken to curtail the conduct, that is an indication of the attitude toward women that prevails in the workplace.

5

management employee of Defendant, that they "would not make it" on the used car lot because of the men who were there, that it is very hard for women to survive there. Dave M., the person in charge of the used car lot, said the same thing to Branson.

These statements are sufficient to raise a factual issue as to whether Defendant's management knew of the atmosphere toward women on the used car lot. In addition, however, they provide an indication of the level of hostility directed toward women by the men working on that lot. If the attitude and behavior toward women was so negative that management was reluctant to allow women to work there, it could certainly constitute a negative environment that would be sufficiently pervasive and severe as to alter the conditions of employment for women on the lot. In other words, these statements by management personnel provide an overview of the context in which the specific incidents described by Plaintiff occurred. *Penry*. In combination with the evidence of the specific incidents, these statements raise a genuine issue of fact concerning the existence of a hostile work environment. Furthermore, the combination also raises an issue of fact as to whether the hostility exhibited on the lot was gender-based or simply generalized hostility and obnoxious behavior. Defendant's motion for summary judgment, therefore, must be denied.

## O R D E R

For the above stated reasons, Defendant's motion for summary judgment (Doc. 25) is DENIED.

Dated at Albuquerque this 15th day of January, 1999.

                                                  **BRUCE D. BLACK**
                                                  United States District Judge

Counsel for Plaintiff:
Michael E. Mozes
Law Offices of Michael Mozes, P.C.
1524 Eubank N.E., Suite 4
Albuquerque, New Mexico 87112

Counsel for Defendant:
Cindy Lovato-Farmer
Margaret McNett
Dines, Gross & Esquivel, P.C.
6301 Indian School Rd. N.E. #900
Albuquerque, New Mexico 87110